MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

JOSEPH FAZIOLI (CABN 275564)
TIMOTHY LUCEY (CABN 172332)
Assistant United States Attorneys

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5595
Facsimile: (408) 535-5066
joseph.fazioli@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 09-00487 RMW |
| Plaintiff, ) ) | UNITED STATES' SENTENCING MEMORANDUM |
| v. ) ) | SENTENCING DATE: |
| ALBERT KE-JENG HU, ) | November 26, 2012 |
| Defendant. ) ) | |

On June 20, 2012, after a three-week trial, a jury after deliberating for less than two hours convicted defendant Albert Ke-Jeng Hu of seven counts of wire fraud, in violation of 18 U.S.C. § 1343. (CR 241). Evidence at trial showed that Hu, the founder of several international hedge funds, ran an investment fraud scheme which defrauded various investors throughout the world of at least $6.5 million. Albert Hu also engaged in identify theft, falsely claiming that a former business associate was affiliated with his funds and going so far as to forge his signature on investment documents provided to investors. Albert Hu's conduct demonstrates a pattern of brazen and deliberate deception, and his case has no mitigating factors. As set forth further below, the United States agrees with the Probation Officer's recommendation and respectfully

requests that this Court sentence Albert Hu to a low end Guidelines sentence of 235 months imprisonment.

## RELEVANT FACTS

The evidence submitted at trial demonstrated the following facts:

Defendant Albert Ke-Jeng Hu carried out an investment fraud scheme from 2002 to 2008 that defrauded multiple investors of millions of dollars. Albert Hu targeted prominent members of the Chinese-American business community in Silicon Valley as part of his investment fraud scheme. Albert Hu founded and operated international hedge funds under the names Asenqua Beta Fund and Fireside LS Fund out of locations in San Francisco, Sunnyvale, and Singapore. Albert Hu lied to investors by telling them that he had more than $200 million in his hedge funds and that they would receive rates of return as high as 20 to 30 percent a year. Albert Hu also lied about entities that were supposedly affiliated with his hedge funds, such as a prominent law firm, an auditing firm, a hedge fund administrator, and a chief financial officer. In reality, none of those entities ever had any connection with Albert Hu's hedge funds. Albert Hu used the names of these entities to legitimize the hedge fund and give the perception that the hedge fund was secure. Furthermore, the so-called "independent" auditing firm of "Castillo, Lyn, Cohen & Vijay" was a facade Albert Hu fabricated to lure victim-investors to invest in his funds. Albert Hu also falsely claimed that a former business associate was the Chief Financial Officer for his funds, and forged this associate's signature on various financial documents. Albert Hu provided his investors with phony financial reports and graphs he had concocted which showed non-existent and illusory trading history regarding funds which were already gone.

As a result of Albert Hu's lies regarding his hedge funds and their affiliated entities, investors in the Northern District of California and overseas directed their brokers to wire money to accounts Hu and representatives controlled both in the United States and abroad. In all, Albert Hu raised a total of over $7 million from investors based on his false statements. He then failed to invest this money in the manner that he had promised, failed to provide the investors with the interest they had been promised, and failed to repay their principal when requested. Albert Hu instead invested virtually none of his investors' money, instead diverting it to pay his own

personal expenses as well as prior investors and others.

The investors who trusted Albert Hu suffered a loss of over $6.5 million. Albert Hu left the United States after the collapse of his investment fraud scheme, and only returned to this country after his extradition from Hong Kong.

The financial and emotional impact of Albert Hu's crimes on his victims is real, significant, and permanent. (PSR ¶ 13). The victim impact statements submitted by victims relate the following, for example:

- Victim YMD and her husband lost $830,000. YMD is facing breast cancer, and states that Albert Hu's fraud has deprived her of a reserve fund for emergency medical expenses as well as significantly impairing her daughter's educational prospects.

- Victim FYL, who lost $450,000 and testified at trial, observes that "[e]very member of the family has been traumatized by this crime. I worked hard all my life with a modest goal of building some humble foundation for my children. Majority of the saving was dedicated to help my sons to start their own family (purchase the first house), plus help my mother (she is 89 now) move into a better place. These savings were all cheated out of me by this crime." FYL characterizes Albert Hu as "manipulative and evil. He is a very treacherous person. Always consider[s] himself the smartest person."

- Victim HFC, who lost $300,000, states that "[t]his is not a small number, it is a life time saving for my coming retirement (I am currently 62) to support my family with one son still studied in colleges. It is completely devastating to my rest of my life." HFC expresses concern that "[Hu] is locked up in US now. However, when he is released in the future, he may come back to Taiwan to do something to me."

- Victim JMV, who lost $2,000,000 and testified at trial, argues that "the conduct that has led to this crime is one of the most repugnant white collar behavior I can imagine...this criminal behavior undermines the very stability and credibility of our market driven financial system, on which our society, economy, as well as the retirement of millions of people depending. It is my hope that the court understands the gravity of such crimes and punishes them accordingly..."

- Victim GD, who testified at trial, lost $300,000. At trial GD expressed that the loss affected herself and her family both financially and emotionally.

- Numerous victims report feeling anger, anxiety, fear, guilty, sleep loss, loss of concentration at work and home, as well as depression.

- Albert Hu's former business associate A.P. testified at trial about how shocked he was that Hu used his name in connection with his fraudulent scheme, and forged A.P.'s name on documents he provided investors.

//

**DISCUSSION**

The Probation Department's calculation of Albert Hu's Guidelines results in an adjusted total offense level of 37 and Criminal History Category II. (PSR ¶¶ 51, 57). The sentencing range for imprisonment under this Guidelines calculation is 235 to 293 months. The Probation Department recommends that the Court impose a low end Guidelines sentence of 235 months along with other enumerated conditions. The United States has reviewed the final pre-sentence report (PSR) and has no objection to the either the Guidelines calculation or the factual information contained in the PSR. For reasons stated below, the United States agrees with the Probation Officer and recommends that Albert Hu receive a low end Guidelines prison term of 235 months along with the other conditions enumerated by the Probation Department.

**A.   The Defendant's Applicable Guideline Range**

For the reasons stated below, the United States agrees with the Probation Department's calculation of Albert Hu's Guidelines.

(1)   <u>Base Offense Level/Loss Amount</u>

The United States agrees with the Probation Department that Albert Hu's base offense is seven and that he should receive a 18 level enhancement due to his victims' loss amount being greater than $2.5 million. (PSR ¶¶ 39, 40). Albert Hu's victim-investors suffered a net loss of over $6.5 million as a result of his investment fraud. (PSR ¶ 40).

(2)   <u>Ten or More Victims</u>

The United States agrees with the Probation Department that Albert Hu's offense involved ten or more victims and that a two level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(2)(A). (PSR ¶ 41). In addition to victimizing over 10 investors and their family members by stealing their money, Albert Hu also victimized his former business associate A.P. by stealing his identify and falsely associating him with Hu's hedge funds. The United States also agrees with the Probation Department that "[t]he organizations that Hu falsely claimed were associated with his hedge funds were also victims in this matter. Their reputations were jeopardized; however, the results of Hu's actions are difficult to quantify." (PSR ¶ 32).

//

      (3)    <u>Sophisticated Means</u>

The United States agrees with the Probation Department that Albert Hu should receive a two level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(B)(10). (PSR ¶ 42). A two level enhancement under § 2B1.1(b)(2)(B)(10) is appropriate if any of the following three subsections apply: (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means.

Evidence at trial demonstrated that Albert Hu's investment fraud falls under each of the three subsections for this enhancement. The United States concurs with the Probation Department's position that § 2B1.1(b)(2)(B)(10)(A) applies because, among other reasons, Albert Hu "relocated his fraudulent investment funds to Singapore in an effort to evade law enforcement or regulatory officials [] moved his investment funds to Singapore and asked victims of his fraud to wire money abroad [] and told victims that he was transferring his funds to Singapore, for among other reasons, to avoid oversight of the SEC and other regulatory authorities." (PSR ¶ 42).

Furthermore, a substantial part of defendant's fraudulent scheme was committed from outside the United States and thus falls under § 2B1.1(b)(10)(B). In addition to the facts described above, defendant perpetrated his fraudulent scheme in part using numerous bank accounts that he controlled and which were located outside the United States.

Finally, defendant's offense conduct otherwise involved sophisticated means pursuant to § 2B1.1(b)(10)(C). The Application Notes to § 2B1.1 state that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicate sophisticated means." Here, evidence at trial demonstrated Albert Hu hid assets and transactions, both created and used fictitious entities (including fabricating the existence of an auditing firm) and used offshore financial accounts.

      (4)    <u>Violation of Securities Law</u>

The United States agrees with the Probation Department that Albert Hu should receive a

1    four level enhancement pursuant to U.S.S.G. § 2B1.1(b)(18)(A)(iii).[1] (PSR ¶ 43). The
2    Guidelines provide a four level enhancement if the offense involved "a violation of securities
3    law, and at the time of the offense, the defendant was ... (iii) an investment adviser...." U.S.S.G. §
4    2B1.1(b)(18)(A)(iii). As a preliminary matter, it is important to note that the commentary to this
5    section (at n. 14(B)) expressly provides that "a conviction under securities law or commodities
6    law is not required in order for subsection (b)(18) to apply." In this case, Albert Hu was not
7    neither criminally charged nor convicted of a securities offense. However, the SEC did file a
8    civil action against Albert Hu alleging multiple violations of the securities laws and regulations.
9    *See Securities and Exchange Commission v. Albert K. Hu et al*, CV 09-01177 RMW. This Court
10   found those allegations of securities law violations sufficiently meritorious as to justify the
11   issuance of a Temporary Restraining Order and Preliminary Injunction against the defendant.
12   *See* CV 09-01177 RMW PACER No. 26 & 33.

13   Here, Albert Hu promised to invest his clients monies according to the terms of the
14   relevant investment agreements and private placement memoranda. He later (falsely) told them
15   that their funds had been invested, pursuant to those agreements, and had even increased in
16   value. He often indicated what stocks or other securities were being traded (i.e., Intel) when the
17   investors pressed for him for more details. And, in addition to misappropriating their funds, the
18   agreements expressly provided that Albert Hu and his companies would retain a percentage of
19   the investments for operational expenses and profits. This enhancement should therefore apply.

20   The defendant may well argue that he was not an investment advisor to any of the
21   victims, such that he does not fall within the ambit of the enhancement.[2] Any such argument

---

[1] The United States believes that the defendant's offense is the type of criminal conduct which would fall under the private abuse of trust enhancement under U.S.S.G. § 3B1.3. However, as discussed above, the United States believes that the defendant should be subject to a four level enhancement for a violation of securities law pursuant to § 2B1.1(b)(18)(A)). Comment 14(c) to 2B1.1 states that "If subsection (b)(18) applies, do not apply §3B1.3." In the event that this Court were to reject the Probation Officer's recommendation to apply a four level enhancement under § 2B1.1(b)(18)(A), then the defendant should receive instead a two level enhancement for private abuse of trust under § 3B1.3.

[2] For purposes of the investment adviser enhancement, the term "investment adviser" carries the same meaning as in the Investment Advisers Act of 1940. *See* U.S.S.G. § 2B1.1 comment. (n. 14(A)). The Investment Advisers Act defines an "investment adviser" as "any person

would be meritless. Although there does not appear to be any controlling authority in the Ninth Circuit, persuasive authority from the Eleventh Circuit involving a similarly situated defendant affirmed the district court's application of the four level enhancement. *United States v. Ogale*, 378 Fed.Appx. 959, 960-61 (11th Cir. 2010). In *Ogale*, the Eleventh Circuit rejected a hedge fund manager's contention that he was not an investment advisor because the victims had not come to him for investment advice and he had held them at arms length. In ruling that the enhancement should apply, the Eleventh Circuit in *Ogale* reasoned, at page 960, that:

> the exercise of control over what purchases and sales are made with investors' funds is considered to be investment advice for purposes of the Investment Adviser's Act and hence the investment adviser enhancement. *See United States v. Elliott*, 62 F.3d 1304, 1310 (11th Cir.1996) (concluding that defendants provided investment advice by controlling which investment vehicles their customers invested in); *Abrahamson v. Fleschner*, 568 F.2d 862, 871 (2d Cir.1977) (stating that "many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds").

(5)   Aggravating Role

The United States agrees with the Probation Department that Albert Hu should receive a four level enhancement for being the organizer/leader of a criminal activity pursuant to U.S.S.G. § 3B1.1. The defendant's "investment funds" were for all intent and purposes a purely criminal activity, as the evidence at trial demonstrated that defendant lied to victim-investors to obtain their money, failed to invest their money for their benefit, forged his former business associate's signature on documents, and falsely claimed that various entities were affiliated with his funds. Because the defendant employed at least five employees, a four level adjustment is warranted. Furthermore, the Securities and Exchange Commission has filed a civil action against Albert Hu's employee Steven Bond alleging securities fraud.

Although none of defendant's employees have been charged criminally, that is not a prerequisite for the application of the organizer/leader enhancement, where the defendant engages in criminal activity that is "otherwise extensive." The Application Notes to § 3B1.1, at

---

who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. . . ." *See* 15 U.S.C. § 80b-2(a)(11).

7

note 3, provide that "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, *a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.*" (Emphasis added).

Here, the Court heard evidence at trial from witnesses and saw multiple documents references the numerous individuals who either worked at Mr. Hu's direction as employees in the United States, Singapore, Hong Kong, and elsewhere or provided services to him as third party vendors (financial institutions, commercial property managers). Multiple victim investors indicated that they invested with Mr. Hu, among other reasons, because he was the leader of a larger team of professionals. Mr. Hu's scheme would have been much less persuasive to his investors if he had been acting alone. In other words, Mr. Hu's criminal conduct necessarily depended on his manipulation and orchestration – be it knowing or unknowing – of multiple individuals on both sides of the Pacific.

(6) <u>No Credit for Acceptance of Responsibility</u>

Finally, the United States agrees with the Probation Department that Albert Hu should receive no credit for acceptance of responsibility. (PSR ¶ 48). It is the defendant's burden to demonstrate acceptance of responsibility. *United States v. Lopez-Patino,* 391 F.3d 1034, 1038 (9th Cir. 2004). "When a defendant chooses to put the government to its burden of proof at trial, a downward adjustment for acceptance of responsibility should be 'rare.'" *United States v. Weiland,* 420 F.3d 1062, 1080 (9th Cir. 2005). Here, Albert Hu is unrepentant, and to this day fails to admit that he even committed a crime. (PSR ¶ 48).

**B.   A Low End Guidelines Sentence of 235 Months Imprisonment for Albert Hu is Reasonable and Appropriate under 18 U.S.C. § 3553**

A 235 month sentence for Albert Hu would comply with the purposes set forth in 18 U.S.C. § 3553(a). Moreover, unlike many white collar defendants, Albert Hu does have a criminal history, having previously been convicted of a domestic violence offense. (PSR ¶ 54).

Moreover, a low end Guidelines sentence accords with the objectives of sentencing set out in 18 U.S.C. § 3553(a). First, a sentence of 235 months imprisonment would reflect the

seriousness of Albert Hu's offense, wire fraud, promote respect for the law, and provide just punishment for this offense.  See 18 U.S.C. § 3553(a)(2)(A).   Albert Hu stole at least $6.5 million from over 10 victims.  He also stole his former business associate's identity to facilitate his investment fraud.  Albert Hu's criminal activities were not an one-time mistake, but rather a pattern of criminal conduct which took place from September 2002 through June 2008.  (PSR ¶ 7).  A substantial custodial sentence - 235 months - is an appropriate sanction in this case for Albert Hu given: (1) the seriousness of his offense; (2) the substantial amount that he stole; and (3) the lengthy period of time which he engaged in investment fraud.

The requirement under § 3553(a)(2)(A) that this Court impose a sentence that will "promote respect for the law" is an aggravating factor in this case.  Albert Hu's extensive criminal acts demonstrates a fundamental disrespect for the law.  The scope of Albert Hu's dishonesty is staggering, extending from false promises to investors, to lies about various entities associated with him funds, to forging former associate's signatures, to outright theft of investor funds.  Albert Hu's utter lack of remorse shows a profound lack of respect for the law and raises troubling concerns that he will engage in future fraud.

A 235 month sentence for Albert Hu would also serve as a "just punishment" under § 3553(a)(2)(A).  Such a disposition would be proportional with similar Guidelines sentences that other Judges have imposed in analogous Northern District of California cases involving significant investment fraud.  *See e.g. United States v. Morgen*, CR 08-00845 CRB (188 month Guidelines sentence after guilty plea in $9 million investment fraud case); *United States v. Jasper Knapp*, CR 11-00009 JSW (253 month sentence after guilty plea in $40 million securities fraud case); *United States v. David Boyer Prince,* CR 09-00153 CRB (96 month above Guidelines sentence in $850,000 investment fraud case); *United States v. Nikolai Tehin*, CR 03-00236 SI (previously VRW) (Judge Walker imposed 170 month sentence after attorney defendant convicted at trial of defrauding clients of over $1.1 million); *United States v. Gary Bassett*, CR 08-00865 JW (63 months Guidelines sentence after guilty plea in $850,000 investment fraud case); *United States v. Trabulse*, 09-00350 WHA (97 month Guidelines sentence after guilty plea in $8.3 million investment fraud case); *United States v. Heckscher*, CR 09-00998 SI (240

months Guidelines sentence after guilty plea in $50 million investment fraud scheme).  In all of these cases, the defendant was sentenced within or above the applicable Guidelines range.

Second, a sentence of 235 months imprisonment would afford adequate deterrence of further criminal conduct–both for the defendant *and* the public, as 18 U.S.C. § 3553(a)(2)(B) requires.  The need for deterrence is particularly acute in this case given that Albert Hu has chosen to take no responsibility for his actions.  Albert Hu stole over $6.5 million dollars from numerous victims, then squandered the money in part on personal items and other non-investment expenditures.  In these difficult economic times, there will be increasing temptations for individuals to engage in similar fraudulent schemes.  By imposing a significant custodial sentence, this Court will demonstrate both to this defendant and the public that investment fraud "does not pay" and will instead result in substantial prison time.

Furthermore, a sentence of 235 months imprisonment would protect the public from further criminal conduct by the defendant.  *See* 18 U.S.C. § 3553(a)(2)(C).  There is every indication that Albert Hu remains a significant economic danger to the community upon his release.  Albert Hu's pattern of dishonesty demonstrates that does not respect the truth, and he does not admit when he has engaged in wrongdoing.  Albert Hu has shown that he is prepared to go to great extremes to defraud investors who entrusted him with their money.   Despite having spent years in prison while delaying these proceedings, he still fails to take any responsibility for his crimes.  Albert Hu also sent significant funds abroad, and has substantial business contacts in Asia that could facilitate future fraud.

**C.     Restitution**

The United States agrees with the Probation Department that the defendant should be required to pay restitution totaling approximately $6.5 million..

//
//
//
//
//

10

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence Albert Hu to 235 months imprisonment in addition to the other terms and conditions enumerated by the Probation Department.

DATED: November 19, 2012          Respectfully submitted,

                                  MELINDA HAAG
                                  United States Attorney


                                  _____/s/_____
                                  JOSEPH FAZIOLI
                                  TIMOTHY LUCEY
                                  Assistant United States Attorneys