JERRY Y. FONG, ESQ. (SBN 99673)
THE LAW OFFICE OF JERRY FONG
706 COWPER STREET; SUITE 203
PALO ALTO, CA 94301
650/322-6123
650/322-6779 fax
jf@jerryfong.com

Attorney for Defendant ALBERT KEJENG HU

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> ALBERT KEJENG HU, <br> Defendant. | CASE NO. CR 09-00487 RMW <br><br> DEFENDANT ALBERT HU'S BRIEF RE SENTENCING ISSUES FOR WHICH AN EVIDENTIARY HEARING IS REQUESTED AND WARRANTED. <br><br> Date: January 14, 2013 <br> Time: 9:00 a.m. <br> Judge: Hon. Ronald M. Whyte |

Pursuant to the Court's order (issued orally on November 26, 2012), Defendant Albert Hu hereby submits his list of sentencing issues for which he is requesting an evidentiary hearing as part of his sentencing hearing (scheduled on January 14, 2013, at 9:00 a.m., before this Court). Mr. Hu further contends that he is entitled to have an evidentiary hearing on these issues:

1. <u>Enhancement For 10 Or More Victims</u>

Mr. Hu objects to the PSR's (at ¶ 41 of the PSR) recommendation for a two-level increase pursuant to USSG §2B1.1 (b)(2)(A)(i)(the offense involved 10 or more victims).

As Mr. Hu argued in his correspondences with the Probation Officer and in his Partial Sentencing Memorandum, the PSR has never identified who were these 10 or more

1 "victims", despite Mr. Hu's repeated requests for such identification.

2 While Mr. Hu cannot rebut an unknown (given the PSR's failure to identify
3 who the 10 or more victims were), Mr. Hu is relying on a "victims" list which the
4 Government had put together. To the extent that the PSR was also relying on the same list,
5 then Mr. Hu would present the following objections.

6 The Government's list alleges these individuals as "victims":

7 1. Andy Yan.
8 2. Yu-Mei Doong.
9 3. Grace Doong.
10 4. Hwa-Fu Chen.
11 5. Bob Lin.
12 6. Joe Ye.
13 7. Dan Ye.
14 8. Jean Marc Verdiell.
15 9. Chris Danielan.
16 10. Dennis and Eileen Tan (as Accelera Ventures).
17 11. Ka Shun Wong.
18 12. Eugene Ko.
19 13. Hong Liang Lu.

20 1a) <u>Bases for Mr. Hu's Objection & Request For An Evidentiary Hearing</u>

21 Even according to the Government's own view, the individuals listed from #9
22 through #13 (Danielan, Tan, Wong, Ko, and Lu) had not invested in either Asenqua Beta
23 Fund or Fireside LS Fund, the two hedge funds at issue in this case. See, the FBI 302
24 statements which the Government prepared after interviewing each of the individuals (#9
25 through #13).

26 The relevant portion of Danielan's 302 report (see page 1, ¶ 4 and 5) is attached
27 as Exhibit "C" to the Declaration of Attorney Jerry Fong (hereinafter "Fong Decl."). The
28 relevant portion (see page 1, 2nd ¶) of Wong's 302 is attached as Exhibit "D" to Fong Decl.

The relevant portion (see page 1, 5th ¶;  page 2, 2nd and 3rd full ¶ ) of Ko's 302 is attached as Exhibit "E" to Fong Decl.  The relevant portion (page 1, 3rd ¶; 5th ¶) of Lu's 302 is attached as Exhibit "F" to Fong Decl.

There was no known FBI 302 for the Tans, #10;  however, their investment in Anoxis only (and not in Asenqua Beta Fund or the Fireside LS Fund) is set forth in the relevant pages of the Sean Varah 302 report, attached as Exhibit "B", page 3, 2nd ¶, to Fong Decl.

Instead, Danielan, Wong, and Ko (#9, #11, and #12) invested only in Konarka, a start-up company specializing in solar technology.  That investment was made through Asenqua Ventures limited partnership, a separate entity from Asenqua Beta Fund and Fireside LS Fund.  See, Exhibit "H" to Fong Decl.  Asenqua Ventures did invest in Konarka.  Exhibit "I".   Albert Hu did not have any ownership interest in or connection to Konarka, other than as an investor (just like Danielan, Wong, and Ko).   Ultimately, that investment was lost when Konarka failed to perform as expected (it did not go public) and it eventually (and very recently) went into bankruptcy.  Exhibit "I".

Individuals #10 (Dennis and Eileen Tan, as Accelera Ventures) invested only in another start-up company, Anoxis, and they did *not* invest in Asenqua Beta Fund and Fireside LS Fund.  Anoxis, like Konarka, failed to perform as expected and eventually going out of business completely (causing the lost of the investment for the Tans, along with other investors, *including Albert Hu*).   Exhibit "B".

Individual #13, Hong Lu, did not invest in Asenqua Beta Fund and/or Fireside LS Fund.  He invested in a different and earlier entity (Asenqua Capital Management Fund).  He also received all of his investment back.  Exhibit "F".

Individual #7 (Dan Ye) also did not invest in either Asenqua Beta Fund or Fireside LS Fund.  Dan Ye invested in the Asenqua Alpha Fund, a different fund.  Exhibit "G", page 2, 2nd ¶.

Individual #2, Yu-Mei Doong did not ever even meet Mr. Hu and she had not heard any of the representations made by Mr. Hu which formed the substance of this case.

Instead, she is the sister of Grace Doong (Individual #3). Grace Doong was the person who made the investments in Asenqua Beta Fund and, subsequently, in Fireside LS Fund. While Grace Doong might have made some of the investments into these two funds with her sister's money, Grace Doong was the only person who had any dealings with Mr. Hu. See, ¶ 14 to Fong Decl. Without having any contacts with Mr. Hu, Individual #2 (Yu-Mei Doong) cannot claim to be a victim of his fraud.

Therefore, at the most, there were only six (6) individuals who invested in either Asenqua Beta Fund or Fireside LS Fund and, therefore, qualified as "victims". They are: Andy Yan, Grace Doong, Hwa-Fu Chen, Bob Lin, Joe Ye, and Jean Marc Verdiell. That is not a sufficient number of victims for USSG §2B1.1 (b)(2)(A)(i), which requires a minimum of 10 victims, to apply.

2. <u>Enhancement For Relocating A Fraudulent Scheme Outside The US</u>

Mr. Hu objects to the PSR's (at ¶ 42) recommendation to add a two-level adjustment pursuant to USSG §2B1.1 (b)(10). That enhancement applies for relocating a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; or committing a substantial part of a fraud scheme from outside the US, or for an offense otherwise involving sophisticated means.

The offense did not involve any of the factors required for §2B1.1 (b)(10) to apply. First, according to the Government, the fraudulent scheme at issue here consisted of Mr. Hu soliciting investors (specifically, Bob Lin and Marc Verdiell) to invest substantial amounts of money in either the Asenqua Beta Fund and/or the Fireside LS Fund and then defrauding them by making various misrepresentations about the two funds.

2a) <u>Bases For Mr. Hu's Objection & Request For An Evidentiary Hearing</u>

Bob Lin was one of two key witnesses whose lost investment formed the basis for the Indictment (Marc Verdiell is the other). Mr. Lin testified extensively during Mr. Hu's trial. Mr. Lin's trial testimony actually provides the most compelling evidence relevant to this and other sentencing issues (for which Mr. Hu is requesting an evidentiary hearing). The relevant portions of Mr. Lin's trial testimony is attached as Exhibit "A" (in 5 sub-parts) to

Fong Decl.

Mr. Lin's trial testimony demonstrates that all acts forming the commission of the offense had taken place right here, in Santa Clara County. Mr. Hu solicited Bob Lin and Marc Verdiell in Santa Clara County. He made all of the representations relating to the two hedge funds here, in Santa Clara County. Mr. Lin and Mr. Verdiell entered into the agreement to invest here in Santa Clara County, and they also gave the money to Mr. Hu while they (Lin and Verdiell) were present in Santa Clara County. See, Exh. "A", page 63, lines 17-25; page 64; pages 90-91; page 173, l. 12-25; to Fong Decl. Incidentally, that is precisely why the Government sought and obtained venue in the Northern District of California (San Jose Division).

The fact that the Fireside LS Fund was subsequently moved to Singapore did not alter the fundamental fact that the crime had already been committed while all the parties (defendant and victims) were present in the Bay Area. See, Exh. "A", page 106, lines 11-25; page 109, lines 10-25). The move to Singapore made no difference in Mr. Lin or Mr. Verdiell's decision to invest or continue to invest. Exh. "A", page 110, lines 4-19; page 125). Furthermore, according to Mr. Lin and Mr. Verdiell, Mr. Hu had explained to them that he was moving the Fireside LS Fund to Singapore to take advantage of the more flexible and friendly environment for operating hedge funds, as evidenced by the many hedge funds headquartered in that area. *Id.* There is no evidence that the move had been made to evade US officials.

Quite the opposite, during the relevant time period, Singapore had emerged as one of the most desirable (***if not the most desirable***) destination or locations for hedge funds. Many hedge funds started there or relocated there for legitimate business reasons. See, Exh. "J" (in sub-parts 1 to 3) to Fong Decl.

Finally, the fraud scheme did not involve sophisticated means. Mr. Lin testified that he could not recall reading any of the important warnings or advisements contained in the PPM. Exh. "A", page 208; pages 214-216; ***particularly page 217-218***; page 243, lines 16-24. According to the Government, the fraud consisted primarily of Mr.

1 Hu making false statements or claims to Mr. Lin and Mr. Verdiell to get them to give their
2 money to Mr. Hu. There was nothing sophisticated about that: lying to get people to give
3 you money.

4     3.     Enhancement For Mr. Hu's Status As An Investment Adviser

5 Mr. Hu objects to the PSR's (at ¶ 43) recommendation for a four-level
6 enhancement pursuant to USSG §2B1.1 (b)(18)(A)(iii). That subsection applies if the
7 offense involved a violation of the securities law ***and*** the defendant was an investment
8 adviser to the victims. The offense did not involve any violation of securities law. More
9 importantly, Mr. Hu was never an investment adviser to any of the victims (including Mr. Lin
10 and Mr. Verdiell).

11 The Private Placement Memorandum of each of the two hedge funds at issue
12 (the Asenqua Beta Fund and the Fireside LS Fund) specifically warned that each prospective
13 investor (including Lin and Verdiell) should, before investing, consult with his or her own
14 investment adviser (and other professionals such as an attorney or an accountant) as to
15 advisability or suitability of the investment. See, Exhibit "K", page 4, 3rd ¶, to Fong Decl;
16 see, also Exhibit "A", page 217, lines 1-25; pages 218, lines 1-5. Obviously, that warning
17 should have placed each investor on notice that Mr. Hu was not acting as that investor's
18 investment or financial adviser. Instead, Mr. Hu stood in an arms-length position relative to
19 each prospective investor: Mr. Hu was the seller of a product (the hedge fund) and each
20 prospective investor was a buyer or potential buyer for that product.

21 At trial, neither Mr. Lin nor Mr. Verdiell testified that he had, even
22 subjectively, considered or relied on Mr. Hu to act as his investment adviser. Furthermore,
23 each testified that he had very limited dealings with Mr. Hu prior to the contact in which the
24 idea of the hedge fund investment was raised. Certainly, neither testified that he had ever
25 used Mr. Hu as an investment adviser previously.

26     4.     Enhancement For Mr. Hu's Status As The Leader/Organizer Of
The Offense Involving 5 Or More Participants

27
28 Mr. Hu objects to the PSR's (at ¶ 45) recommendation to add four levels

1  pursuant to USSG §3B1.1 (a)(as the leader or organizer of a criminal activity involving five
2  or more participants or was otherwise extensive).

3        Again, Bob Lin's trial testimony provides very clear evidence that, at the most,
4  only two other individuals had been working with Mr. Hu in the activities which formed any
5  part of the offense: Steve Bond, the fund manager and market researcher, and Linda
6  Danesh, the office administrator. See, Exhibit "A" to Fong Decl., page 105, lines 15-24.
7  There is no evidence that either Mr. Bond or Ms. Danesh participated in any criminal
8  activity. But even if they did, that would be only two participants, not the five or more
9  required by §3B1.1 (a).

10     5. <u>Mr. Hu's Proffer</u>

11       As set forth in ¶ 15 of Fong Decl., should the Court deem it necessary, Mr. Hu
12 stands ready to proffer that he has personal knowledge of the facts necessary (and, as
13 identified in this pleading) to support and supplement his request for an evidentiary hearing.

14     6. <u>Conclusion</u>

15       For the reasons set forth above, Mr. Hu respectfully requests that the Court
16 conduct an evidentiary hearing on the issues identified above and on any other sentencing
17 issues for which there is a factual dispute.

18

19 DATED:    December 19, 2012     Respectfully submitted,

20

21

22                        /S/
                      JERRY Y. FONG, Attorney for Defendant
23                       ALBERT HU