UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ALBERT KE-JENG HU,<br><br>    Defendant. | Case No. CR-09-00487-RMW<br><br>**ORDER OF RESTITUTION**<br><br>[Re Docket Nos. 142, 143] |

A jury convicted defendant Albert Ke-Jeng Hu of wire fraud. He now challenges the government's proposed restitution. In particular, he argues that (1) only victims of the scheme the jury convicted him of are eligible for restitution and (2) that the court should reduce any restitution by the amount of tax benefits the victims received. For the reasons explained below, the court finds that Hu is responsible for the victim losses set forth below and that Hu's argument that he is entitled to reduce the amount of restitution by the tax benefits allegedly received by the victims fails as a matter of law.

## I. BACKGROUND

The indictment charges Hu with a scheme to defraud people. Indictment ¶ 5, Dkt. No. 4. The indictment charges that he induced various investors to wire him money based upon false

ORDER OF RESTITUTION
Case No. CR-09-00487-RMW
SW

- 1 -

representations regarding his hedge funds. Indictment ¶ 6. It also charges that he falsely claimed that prominent business people and businesses were involved with his hedge funds to give them credibility. Indictment ¶ 8-9. The government claims he raised approximately $8 million from investors, failed to invest almost all of this money as promised, and caused investors to lose approximately $6.5 million.

On June 20, 2012, a jury convicted Hu of seven counts of wire fraud, in violation of 18 U.S.C. § 1343, for a scheme to defraud by making fraudulent statements to induce victims to send interstate wire transfers. Indictment; Jury Instructions 13 & 14, Dkt. No. 91; Verdict Form, Dkt. No. 90. On January 14, 2013, the court sentenced him to 12 years in prison. The court delayed determining the amount of restitution to allow time for the parties to provide additional information. The parties have now filed briefs regarding various disputes over the scope of restitution and these issues are ripe for resolution.

## II. ANALYSIS

Under the Mandatory Victims Restitution Act ("MVRA"), the court must order full restitution to victims of a convicted offense when the offense is committed by fraud or deceit. 18 U.S.C. §§ 3663A(c)(1), 3664(f)(1)(A). The parties dispute two key issues. First, they dispute which victims are eligible for restitution. Second, Hu argues that the court should reduce the amount he owes in restitution by the amount victims were able to mitigate by deducting the losses from their taxes.

### A. Relevant Victims

Hu argues that the government is improperly seeking restitution for persons that were not victims of the crimes for which he was convicted. A victim under the Mandatory Victims Restitution Act is "a person directly and proximately harmed as a result of the commission of an offense" and "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A.[1] Here, the crime of conviction includes a

---

[1] The Mandatory Victims Restitution Act was passed to broaden the definition of victim in the case of a scheme in response to the Supreme Court's holding in *Hughey v. United States*, 495 U.S. 411, 420 (1990), that "the loss caused by the conduct underlying the offense of conviction establishes the

scheme as an element of the offense, and therefore the court may order restitution for anyone harmed by Hu's conduct in the course of his scheme. *See* 18 U.S.C. § 1343 (wire fraud includes "having devised or intending to devise any scheme or artifice to defraud"); *United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007) (finding the restitution order may "include acts of related conduct for which the defendant was not convicted"). The government must also establish "that a person or entity is a victim for purposes of restitution" by a preponderance of the evidence. *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). *See also* 18 U.S.C. § 3664(e). The parties dispute the scope of the scheme for which restitution is available.

      Hu argues that the government seeks restitution for victims and conduct outside of the fraud scheme specified in the indictment. He argues that because the indictment only mentions two funds, the Asenqua Beta Fund and Fireside LS Fund, a restitution award should be limited to people who invested in those two funds.

      Both parties agree that restitution is limited to losses that result from the fraudulent scheme charged in the indictment. They disagree, however, over how broadly a court should construe the scope of the charged scheme. Although the Ninth Circuit has not provided a test, it allows restitution for actions not charged in the indictment when the same pattern of behavior for which the defendant is convicted caused the loss. For example, in *United States v. Brock-Davis*, the Ninth Circuit affirmed a restitution order to a motel in one city that it found was the victim of a charged conspiracy in another city. 504 F.3d 991, 998-1000 (9th Cir. 2007). The defendant pled guilty to a conspiracy to manufacture methamphetamine in Missoula, Montana after a housekeeper discovered a partial meth lab in the motel room rented by the defendant in Missoula. *Id.* at 994, 998. The defendant's accomplice told the police they had better check another motel room in Kalispell, Montana, where they discovered another partial meth lab. *Id.* The government only mentioned the motel room in Missoula in the indictment. *Id.* at 998. Although the defendant argued that there was no proven manufacturing of methamphetamine in the Kalispell motel room, the Ninth Circuit found the evidence sufficiently disclosed the existence of the lab and that it was part of the scheme. *Id.* at 998-99. The court found that "the fact that the [the Kalispell motel] was not mentioned in the

---

outer limits of a restitution order" in all cases. *See United States v. Brock-Davis,* 504 F.3d 991, 998 (9th Cir. 2007).

ORDER OF RESTITUTION
Case No. CR-09-00487-RMW
SW
- 3 -

indictment is immaterial" because there was evidence supporting a finding that the Kalispell motel room was used as part of the conspiracy. *Id.* at 999.

Similarly, in *United States v. Grice*, the Ninth Circuit affirmed a restitution order for over $15,000 for mail fraud even though the plaintiff only pled guilty to four counts, representing a $1,400 loss. 319 F.3d 1174, 1176. The court found that the defendant's actions were all part of the same long-standing scheme to defraud using the mail because she used the same method throughout—filing and failing to file change of address forms so that her son's dividend checks came to her instead of him. *Id.* at 1178-79. In *United States v. Johnson*, the Ninth Circuit affirmed a restitution order that included the losses caused by 113 counts of fraud even though Johnson only pled guilty to one count. 132 F.3d 1279, 1286 (9th Cir. 1997). The court found that because "the plea agreement described in detail the method and duration of Johnson's scheme to defraud" he could be ordered to pay restitution for all of the losses. *Id.* at 1287.

Here, the scheme charged in the indictment is not limited to the Asenqua Beta Fund and Fireside LS Fund. Hu was charged and convicted of inducing investors to wire him money through "false representations regarding his hedge funds." Indictment ¶ 6. The next paragraph gives the names of two of Hu's hedge funds—Asenqua Beta Fund and Fireside LS Fund—and the paragraph after that describes actions Hu took in "further part of the scheme to defraud" with respect to those two named hedge funds. *Id.* ¶¶ 7, 8. This does not mean, however, that the scheme was limited to the two named hedge funds. Rather, the indictment describes a scheme to defraud investors by inducing them to send Hu money based upon false representations regarding his hedge funds. The declaration filed by Special Agent Wunderli, who analyzed the financial records of the victims, indicates that many of the investors in the Asenqua Beta Fund and Fireside LS Fund also invested in other funds owned by Hu around the same time. Wunderli Decl. Ex. A. The evidence supports the finding that the following investments were made as a result defendant's scheme:

| Victim | Amount Invested | Fund(s) Invested In | Amount Returned | Restitution |
|---|---|---|---|---|
| Andy Yan | $723,133.00 | Asenqua Beta / Fireside LS | $660,000.00 | $63,133.00 |
| Yu-Mei Doong | $830,000.00 | Fireside LS | $0.00 | $830,000.00 |

| | | | | |
|---|---|---|---|---|
| Marc Verdiell | $2,000,000.00 | Fireside LS | $0.00 | $2,000,000.00 |
| Bob Lin (Does not include $75,000 invested in Anoxis) | $1,000,000.00 | Asenqua Beta / Fireside LS | $0.00 | $1,000,000.00 |
| Joe Ye (Does not include $75,000 invested in Anoxis) | $500,000.00 | Asenqua Alpha / Fireside LS | $200,000.00 | $300,000.00 |
| Grace Doong | $379,962.00 | AQC / Asenqua Ventures | $0.00 | $379,962.00 |
| **TOTAL** | **$5,433,095.00** | | **$860,000.00** | **$4,573,095.00** |

Restitution is not awarded to Hwa-Fu Chen, Dan Ye, Accelera Ventures (Dennis Kam and Eileen Tan) and Donald Lee as the proof was insufficient to show that they invested in hedge funds operated by defendant Hu or that their investments were the result of fraudulent representations. For example, the evidence did not establish what Anoxis was and how investments were obtained for it. The court similarly finds the proof insufficient to support any restitution for investments in Konarka.

### B. Reduction of Restitution Based on Tax Benefits

The court is supposed to order restitution "in the full amount of each victim's losses." § 3664(f)(1)(A); *United States v. Rizk,* 660 F.3d 1125, 1136 (9th Cir. 2011). A court does not consider "compensation with respect to a loss from insurance or any other source" when determining the amount of the restitution. 18 U.S.C. § 3664(f)(1)(B). Rather, the defendant must pay restitution to whoever provided the compensation, after first compensating the victim for any remaining loss. § 3664(j)(1). The purpose of restitution is to make the victim whole by restoring the value of the losses suffered because of the defendant's crime. *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010).

Hu argues that the court should reduce the amount he must pay in restitution by the amount of tax benefits or savings that each investor was able to realize because of their losses. He relies primarily on *U.S. v. Black*. 589 F. Supp. 594, 599 (D. Or. 1984). In that case, the court held that "if investors received tax benefits and did not have to pay civil jeopardy assessments by the Internal Revenue Service (IRS) because the statute of limitations had run, those investors will not be entitled to restitution." *Id*. However, *Black* was decided before the Mandatory Victims Restitution Act became law. The court based its decision on wording and cases interpreting 18 U.S.C. § 3651

(1984), which was repealed later that year. *See* PL 98-473, Title II, § 212(a)(1), (2), Oct. 12, 1984, 98 Stat. 1987. No other courts have followed its holding.

The government argues that the court should not consider tax deductions because they are not supported by the law, would be complex to calculate, and would implicate the privacy rights of the victims because they would have to provide their tax returns to Hu. In the *United States v. McAlpine*, the Tenth Circuit refused to reduce a restitution award because of a tax credit. 32 F.3d 484, 489 (10th Cir. 1994). Although the court also decided *McAlpine* before the MVRA, it based its decision on similar restitution laws, which the MVRA references. The court in *McAlpine* found no support for the "novel proposition" that restitution should be reduced by tax savings. *Id.* It noted that the only situations in which courts reduce restitution are when the defendant was directly "responsible for the victim's receipt of something of value." *Id.* The Sixth Circuit in *United States v. Driver* reached the same conclusion. 132 F.3d 34, 1997 WL 745168 (6th Cir. Nov. 17, 1997). It held that the "critical amount is the amount unlawfully taken by the defendant from his victims, unaffected by speculation as to . . . what they may or may not have done with respect to the treatment of their investments on their individual tax returns." *Id.* at *5. Both courts also noted that the sentencing guidelines could have included modifications for tax benefits and did not. *Id.* at *5 (citing U.S.S.G. § 2B1.1, Application n. 2); *McAlpine*, 32 F.3d at 489 (same).

The court agrees, finding that the full amount of the victims' loss is how much they lost to Hu less any benefit Hu provided directly to the victims. Any benefits the victims received from third parties because of their loss are independent of the restitution award. To the extent, the victims did receive a tax benefit, they may need to compensate the IRS after they receive restitution. But because each victim's tax situation is private and complicated, the court leaves to the victims and the IRS any required reimbursements to the IRS, as its regulations appear to provide for. *See, e.g.,* 26 C.F.R. § 1.165-1(d)(2)(iii).

## III. ORDER

The court hereby amends the judgment against Hu to require him to pay a total of $5,383,095 in restitution to each of the following in the specified amounts:

Andy Yan: $63,133

ORDER OF RESTITUTION
Case No. CR-09-00487-RMW
SW

- 6 -

1    Yu-Mei Doong: $830,000

2    Marc Verdiell: $2,000,000

3    Fuyuan Lin aka Bob Lin: $1,000,000

4    Zhou Ye aka Joe Ye: $300,000

5    Grace Doong: $379,962

7    Dated: August 26, 2013

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge